Jarvis D. RYALS, M.D., Plaintiff–Appellant,

v.

ST. MARY–CORWIN REGIONAL MEDICAL CENTER, a Colorado not-for-profit corporation; Pueblo Radiological Group, P.C., a Colorado professional corporation; Michael E. Ball, M.D., individually and as president of Pueblo Radiological Group, P.C.; Lynn Phelps, M.D.; Mark Forte, M.D.; Marc Johnson, M.D.; Gary LaMotte, M.D.; Mark Mountford, M.D.; Stan W. Jonas, individually and in his capacity as Interim Chief Executive Officer of St. Mary–Corwin Regional Medical Center; Walter Sackett, individually and in his capacity as the Chief Executive of St. Mary–Corwin Regional Medical Center, Defendants–Appellees.

No. 97CA1690.

Colorado Court of Appeals, Div. III.

Jan. 7, 1999.

Certiorari Granted Oct. 18, 1999.

Caplan and Earnest, LLC, Sharon E. Caulfield, Sarah E. Meshak, Boulder, Colorado, for Plaintiff–Appellant

Kennedy & Christopher, P.C., John R. Mann, Dean A. McConnell, Denver, Colorado, for Defendants–Appellees St. Mary–Corwin Regional Medical Center, Stan W. Jonas and Walter Sackett

Hogan & Hartson, L.L.P., Kathryn Webb Bradley, John W. Cook, H. Thomas Coghill, Denver, Colorado, for Defendants–Appellees Pueblo Radiological Group, P.C.; Michael E. Ball, M.D.; Lynn Phelps, M.D.; Mark Forte, M.D.; Marc Johnson, M.D.; Gary LaMotte, M.D.; Mark Mountford, M.D.

Opinion by Chief Judge HUME.

Plaintiff, Jarvis Ryals, appeals the judgment of the trial court dismissing his complaint against defendants, St. Mary–Corwin Regional Medical Center (Hospital), Pueblo Radiological Group (PRG), and others in their individual and professional capacities, for lack of subject matter jurisdiction. We affirm.

Plaintiff, a neurologist, is a member of the medical staff of the Hospital and is qualified to read and interpret magnetic resonance images (MRI's). At one time, he was a partner in Southern Colorado MRI, Ltd., which performed MRI services. He read and interpreted MRI's taken at its facility.

In 1995, Southern Colorado MRI, Ltd., was dissolved. The Hospital then acquired its own MRI equipment, which was placed on its premises, and plaintiff attempted to transfer his MRI privileges to the Hospital. However, the Hospital had a long-standing exclusive contract with PRG, which allowed PRG to perform all diagnostic imaging services on Hospital premises. Plaintiff asked PRG if he would be allowed to read MRI's and was informed that it only allowed members of the Hospital Radiology Department to interpret MRI results.

Plaintiff then contacted the chief executive officer of the Hospital, who directed him to submit his request for MRI privileges to the Hospital's Medical Qualifications Committee. At a meeting held on February 2, 1996, the Medical Qualifications Committee denied plaintiff's request based on the exclusive contract with PRG.

Plaintiff renewed his request through the Medical Qualifications Committee, and, in a meeting held March 1, 1996, it again denied the request, stating that: "The Hospital Board would be the one to grant privileges. The Board does have the right to have an exclusive contract with the Radiology Department. This Committee will reconsider the request if the Board reconsiders their exclusive contract."

The Hospital's chief executive officer sent plaintiff a letter on March 4, 1996, informing him that the Medical Qualifications Committee had declined his request for MRI privileges because of the exclusive contract with PRG.

Thereafter, the Hospital's Governing Board held a meeting on March 12, 1996, at which a resolution was passed. The resolution specified that entering into exclusive contracts was a long-standing practice of the Hospital and that the "Board has been requested to review the granting of contracts exclusive in nature for specialty physician services within the departments of pathology and diagnostic imaging...." The Board then resolved that the granting of exclusive contracts was within the Hospital's authority as a "reasonable exercise of Hospital's power and authority to manage its facilities in the best interest of the community and quality patient care."

Plaintiff learned of the resolution on or about May 29, 1996, when he received a copy of it along with a copy of the Hospital's exclusive contract with PRG. Thereafter, plaintiff filed suit, asserting several antitrust claims, and added claims purporting to assert common law tort and contract theories.

Upon a motion by defendants to dismiss for lack of subject matter jurisdiction, the trial court dismissed plaintiff's suit, finding that he had failed to exhaust his administra-

tive remedy by not filing a complaint with the Committee on Anticompetitive Conduct as required by § 12–36.5–106, C.R.S.1998.

This appeal followed the trial court's dismissal.

## I.

Plaintiff first contends the trial court erred in determining that the Committee on Anticompetitive Conduct had jurisdiction over his claims. We disagree.

■ A motion to dismiss for lack of subject matter jurisdiction is governed by C.R.C.P. 12(b)(1). Under this rule, a plaintiff has the burden to prove jurisdiction. The trial court, as finder of fact, may receive any competent evidence pertaining to the issue of subject matter jurisdiction, and its resolution of this issue will not be reversed unless it is clearly erroneous. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993).

Here, the motion to dismiss was premised on the provisions of the Colorado Professional Review Act (CPRA), § 12–36.5–101, et seq., C.R.S.1998. The CPRA was enacted in 1989 and governs professional review activities of physicians. It also created a state agency called the Committee on Anticompetitive Conduct (CAC), which reviews the final acts of governing boards of medical organizations relating to unreasonable anticompetitive conduct. *See* § 12–36.5–106(7), C.R.S. 1998.

Section 12–36.5–106(7), C.R.S.1998, provides:

Any physician who is the subject of a final action by a governing board, which action results in the denial ... of privileges

... and who believes that such action resulted from unreasonable anticompetitive conduct shall have, *as his sole and exclusive remedy,* direct review of the record by the committee. Such review shall be limited to the sole issue of whether such final board action resulted from unreasonable anticompetitive conduct. *Failure to exhaust this administrative remedy before the committee shall preclude the right of de novo review on the merits of the issue*

· *of unreasonable anticompetitive conduct.* (emphasis added)

Plaintiff argues that the Hospital's Governing Board did not take final action regarding his request for MRI privileges and that, if it did, he was not properly notified. He also asserts that, because he was not explicitly made "the subject of" a final action by the Governing Board, § 12–36.5–106(7), C.R.S. 1998, does not apply to him. We do not agree.

■ On or about May 29, 1996, plaintiff received notice of the Governing Board's resolution of March 12, 1996. The resolution addressed the Hospital's ability to enter into exclusive contracts for the provision of diagnostic imaging and was adopted pursuant to a request for review of the Hospital's practice of entering into such exclusive contracts.

Based on plaintiff's prior communications with the Hospital's chief executive officer, the Medical Qualifications Committee, and PRG, the resolution thus informed him that the exclusive contract remained in force, and he could not be granted privileges under it. Taken as a whole, the communications between the parties and the various hospital entities demonstrate that the March 12 resolution effectively made plaintiff "the subject of" a final action which resulted in the denial of MRI privileges to him.

Thus, we conclude that the March 12th resolution constituted "final action by a governing board" under § 12–36.5–106(7), C.R.S. 1998, and that the trial court did not err in its determination of this issue.

■ Plaintiff further asserts that his receipt of the resolution did not constitute "notice" under the CPRA, as it did not specifically address his request for privileges, nor was it clearly specified as a "final action" of the Governing Board.

However, the record demonstrates that after plaintiff became aware of the resolution in May 1996, he filed a complaint in the trial court. Hence, his awareness of the implications of the resolution is apparent.

Furthermore, neither the CPRA nor 3 Code Colo. Reg. 713–13, pertaining to the CAC, specifies what form "notice" shall take.

*Cf. Golden's Concrete Co. v. State,* 937 P.2d 789 (Colo.App.1996), *rev'd on other grounds, State v. Golden's Concrete Co.,* 962 P.2d 919 (Colo.1998)(addressing failure to notify where statutory notice provision was applicable).

Thus, we reject plaintiff's arguments based upon alleged formal deficiencies of the notice.

## II.

■ Plaintiff next contends that the actions of the Hospital and PRG were not professional review activities, and thus, they were not subject to review by the CPRA. We disagree.

Citing § 12–36.5–104(1), C.R.S.1998, plaintiff argues that the purpose of the CPRA is to encourage and facilitate professional review of physicians, and that the definition of "professional review activities" must necessarily be limited to the review and evaluation of the quality and appropriateness of patient care provided by and the professional conduct of physicians.

Plaintiff further argues that CAC Rule 6(a)(1), 3 Code Colo. Reg. 713–13, limits the CAC's jurisdiction to allegations that include:

> (c) That the final action of the governing board involved at least one of the following subjects: qualifications of a member physician; quality of patient care; appropriateness of patient care; or the professional conduct of a member physician
>
> . . . .

He asserts that none of these issues was implicated in this case and that, therefore, the CAC would not have had jurisdiction to hear his claims. We are not persuaded.

We are not aware of any authority providing that the jurisdiction of a statutory committee can be limited by departmental regulations. In addition, the record supports the conclusion that the action of the Hospital's Governing Board here was a professional review activity.

Section 12–36.5–104(4), C.R.S.1998, provides that:

> Any professional review committee established by any of the following organizations . . . shall be an approved professional re-

view committee under this article if it operates pursuant to written bylaws. . . .

> (a) The medical staff of a hospital. . . .

It is undisputed that the Medical Qualifications Committee and the Governing Board operated pursuant to written bylaws. In fact, one of plaintiff's claims was for breach of contract for alleged failure to follow those bylaws. Thus, the Hospital entities constituted "professional review committees" for the purposes of the CPRA when they denied plaintiff's request for hospital privileges.

Plaintiff argues that, because the Hospital entities failed to follow their bylaws, they did not "operate pursuant to written bylaws" and thus, that the CAC would not have jurisdiction to review their activities. We disagree with plaintiff's interpretation of this provision. Here, the Hospital entities were "operating pursuant to" written, validly enacted bylaws, and thus, any alleged issues concerning their failure to follow such bylaws that resulted in alleged unreasonable anticompetitive conduct should have been addressed to the CAC.

## III.

■ Plaintiff further contends that he did not need to pursue his common law claims with the CAC, but rather, he should be allowed to pursue those claims directly in the trial court. We disagree.

Plaintiff asserted four claims that were not labeled as antitrust claims: breach of contract, promissory estoppel, tortious interference with contractual relations, and outrageous conduct. He argues that 12–36.5–106(8), C.R.S.1998, allows direct pursuit of those claims outside the auspices of the CAC.

Section 12–36.5–106(8) provides:

> Nothing in this article shall preclude a physician or health care provider *otherwise aggrieved* by the final action of a governing board from seeking other remedies available to them by law, except as provided in subsection (7) of this section. (emphasis added)

Plaintiff contends that these four claims were not based on "unreasonable anticompetitive conduct," and therefore, the above sec-

tion allows him to seek review of his claims in the district court. We are not persuaded.

 In construing statutes, we must give effect to the intent of the General Assembly by looking first at the language of the statute. It must be read and considered as a whole, and construed to give consistent, harmonious, and sensible effect to all of its parts. *Brooke v. Restaurant Services, Inc.*, 906 P.2d 66 (Colo.1995).

Here, the allegations underlying all of plaintiff's claims were based on the conduct of the Hospital entities and PRG in entering and enforcing the exclusive contract which resulted in the denial of his MRI privileges. Accordingly, the substance of plaintiff's allegations determines whether the CAC has jurisdiction over the claims. *See Home Builders Ass'n v. Public Utilities Commission*, 720 P.2d 552 (Colo.1986)(in determining compliance with statutory requirements, resolution of issue turned on substance of action taken, not label placed on it by actor).

Thus, since we conclude that plaintiff's claims have all resulted from alleged acts that constitute unreasonable anticompetitive conduct, the plain language of § 12–36.5–106(7) confers exclusive jurisdiction upon the CAC to review them.

We are unpersuaded by plaintiff's reliance upon *Brooke v. Restaurant Services, Inc.*, *supra*. There, our supreme court held that the Colorado Antidiscrimination Act, § 24–34–301, et seq., C.R.S.1998, was not the exclusive remedy for sex discrimination in employment claims, as there was no express indication by the General Assembly that common law claims were precluded by that Act. Rather, that Act enumerated which claims were subject to the jurisdiction of the administrative agency. *See* § 24–34–402, C.R.S.1998.

Here, § 12–36.5–106(7) expressly provides that a physician's "sole and exclusive remedy" for a denial of privileges alleged to be the result of anticompetitive conduct is by resort to the CAC. Thus, *Brooke* is inapposite in this situation.

IV.

Plaintiff also contends that the trial court erred in dismissing his complaint without affording him an evidentiary hearing. We disagree.

 Hearings on motions are discretionary with the trial court. Further, if all relevant evidence has been presented to the trial court, an appellate court may decide the issue of subject matter jurisdiction without remanding for an evidentiary hearing. *See Capra v. Tucker*, 857 P.2d 1346 (Colo.App. 1993).

██ Here, plaintiff did not request an evidentiary hearing after the jurisdictional issues had been submitted upon motions and written briefs of the parties. His only request at that time was for oral argument in addition to the briefs. Our review of the record convinces us that the facts underlying the jurisdictional issue were not disputed and that resolution of that issue involved only statutory interpretation by the court. Thus, the trial court acted within its discretion in denying the motion for oral argument. *See* C.R.C.P. 121 § 1–15(4).

In addition, because we are satisfied that all of the relevant facts on the jurisdictional issue were essentially undisputed and that they had been presented to and were considered by the trial court, we find no error in its failure to hold an evidentiary hearing.

Therefore, the judgment of dismissal is affirmed.

Judge JONES and Judge STERNBERG*, concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998.