**Mark W. PFENNINGER, M.D. and Women's Health Care Specialists, P.C., Plaintiffs–Appellants,**

v.

**EXEMPLA, INC.; Westside Womens Care; Gayle Crawford, M.D.; Bonita Kolrud, M.D.; Philip Burstein, M.D.; R. Douglas Hunter, M.D.; and Francis Major, M.D., Defendants–Appellees.**

No. 99CA0635.

Colorado Court of Appeals, Div. III.

March 2, 2000.

Rehearing Denied April 27, 2000.

Certiorari Granted Oct. 30, 2000.

Tondre & Schumacher, P.C., Brice Tondre, Denver, Colorado, for Plaintiffs–Appellants

Long & Jaudon, P.C., Christine A. Craigmile, Denver, Colorado, for Defendants–Appellees Exempla, Inc., Philip Burstein, M.D., and R. Douglas Hunter, M.D.

Montgomery, Little & McGrew, P.C., Richard L. Murray, Jr., Patrick T. O'Rourke, Englewood, Colorado, for Defendants–Appellees Westside Womens Care, Gayle Crawford, M.D., and Bonita Kolrud, M.D.

John O. Martin, P.C., Kathleen M. Shea, Denver, Colorado, for Defendant–Appellee Francis Major, M.D.

Opinion by Judge TAUBMAN.

In this action challenging the necessity of exhaustion of administrative remedies, plaintiffs, Mark W. Pfenninger and Women's Health Care Specialists, P.C., appeal the trial court's dismissal of their fourth claim for

relief. We reverse and remand for further proceedings.

Until his retirement, Pfenninger specialized in obstetrics and gynecology and treated patients at Exempla. In March 1998, the Medical Executive Committee (Executive Committee) of Exempla conducted a peer review of several cases in which Pfenninger had rendered treatment to patients. Subsequently, the Executive Committee recommended to the Exempla Board of Directors (Board) that Pfenninger's privileges at Exempla be suspended for 29 days with reinstatement premised on one year's probation.

Pfenninger then requested a hearing before the Board to review the Executive Committee's decision. The Board found that the summary suspension of Pfenninger's privileges was not warranted. However, the Board also recommended that Pfenninger's cases be continuously monitored for a period of time established by the Medical Staff Quality Improvement Committee (Improvement Committee).

Thereafter, the Executive Committee reviewed the hearing committee's decision and, via letter dated July 21, 1998, informed Pfenninger that his privileges had been immediately reinstated subject to continuous monitoring.

On September 16, 1998, plaintiffs filed this lawsuit alleging several claims arising out of the Executive Committee's decision, including the defamation claim at issue here.

Plaintiffs' fourth claim for relief alleged that during an administrative hearing regarding suspension of hospital privileges of Pfenninger, an obstetrician and gynecologist, defendant corporations Exempla, Inc. and Westside Womens Care, and defendant physicians Gayle Crawford, Bonita Kolrud, Philip Burstein, R. Douglas Hunter, and Francis Major, made defamatory statements regarding his treatment of patients. Defendants Hunter and Burstein were at all times relevant to this action president and vice-president, respectively, of the medical staff of Exempla, Inc., known as Exempla Lutheran Medical Center (Exempla). Defendant Major was a colleague of Pfenninger at Exempla and allegedly testified against him at the administrative hearing. Defendants Crawford and Kolrud are physicians with Westside Womens Care, which provides care to patients at Exempla, and is a competitor of plaintiffs. The trial court dismissed plaintiffs' claim because they failed to exhaust administrative remedies prior to requesting judicial review.

In their fourth claim for relief, plaintiffs alleged that defendants falsely stated, or caused to be stated, that Pfenninger's conduct presented an immediate danger to life and a substantial likelihood of injury to patients, employees, and others at Exempla. The defamation claim further averred that such false statements were made with the knowledge that they would be communicated to third parties, including the National Practitioner Data Bank, the Board of Medical Examiners, and insurance companies with whom Pfenninger had contracted.

Subsequently, on December 21, 1998, Pfenninger filed a First Amended Petition before the Committee on Anti-competitive Conduct (CAC). A hearing before CAC was scheduled for May 4, 1999. The record does not reflect the outcome of those proceedings; however, the outcome is not relevant to this appeal.

Plaintiffs' defamation claim arises out of statements allegedly made by the defendants during the hearing process regarding Pfenninger's conduct with respect to patients, Exempla employees, and other persons at Exempla.

On January 12, 1999, defendants Exempla, Burstein, and Hunter filed a motion to dismiss on the basis that the court lacked subject matter jurisdiction. Defendants relied upon § 12–36.5–106(7), C.R.S.1999, which provides that:

Any physician who is the subject of a final action by a governing board, which action results in the denial, termination, or restriction of privileges at or membership in or participation in an organization, and who believes that such action resulted from unreasonable anti-competitive conduct shall have, as his sole and exclusive remedy, direct review of the record by the committee. Such review shall be limited to the sole issue of whether such final

board action resulted from unreasonable anti-competitive conduct. Failure to exhaust this administrative remedy before the committee shall preclude the right of de novo review on the merits of the issue of unreasonable anti-competitive conduct.

The trial court, relying on *Ryals v. St. Mary Corwin Regional Medical Center*, 987 P.2d 865 (Colo.App.1999) (cert. granted Oct. 18, 1999), granted defendants' motion and found that it lacked subject matter jurisdiction with respect to Pfenninger's defamation claim.

■ Pursuant to C.R.C.P. 12(b)(1), a plaintiff has the burden of proving that the trial court has jurisdiction to hear the case. A trial court's determination regarding subject matter jurisdiction is a question of law and is therefore subject to *de novo* review. *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993). If a party fails to exhaust administrative remedies when required, the trial court is without jurisdiction to hear the case. *State v. Golden's Concrete Co.*, 962 P.2d 919 (Colo.1998).

Here, it is undisputed that Pfenninger was the subject of a final action by the Board that resulted in the denial, and subsequent reinstatement with conditions, of his privileges at Exempla.

Relying on § 12–36.5–106(8), C.R.S.1999, plaintiffs contend that their defamation claim is not governed by § 12–36.5–106(7) because this claim is not related to restoration of Pfenninger's hospital privileges. Plaintiffs further argue that because the only remedy provided by § 12–36.5–106(9)(k) is a final order disapproving and setting aside a final administrative action regarding hospital privileges, they could not obtain any relief on their defamation claim if they were required to have it determined by CAC. We agree.

Section 12–36.5–106, C.R.S.1999, created CAC. The purpose of CAC is to review the final actions of governing boards of medical organizations where a physician whose conduct is the subject of review has alleged that the final action was the result of anti-competitive conduct. *See* § 12–36.5–106(7), C.R.S. 1999. Here, the Board is a governing board as defined by § 12–36.5–102(2), C.R.S.1999.

The Executive Committee is a professional review committee authorized pursuant to § 12–36.5–104 to review the professional conduct of medical staff at Exempla and to make recommendations to the Board.

As previously described, § 12–36.5–106(7) provides that a physician challenging a final board action suspending his or her medical privileges that resulted from alleged "unreasonable anti-competitive conduct" has administrative review of the record by the CAC as the sole and exclusive remedy. Section 12–36.5.106(7) also provides that CAC's review shall be limited to the "*sole issue of whether [the] final board action resulted from unreasonable anti-competitive conduct.*" (emphasis added)

Although § 12–36.5–106(7) provides the exclusive remedy regarding the issue of anti-competitive conduct, § 12–36.5–106(8), C.R.S. 1999, states: "Nothing in this article shall preclude any physician ... *otherwise aggrieved by the final action* of the governing board from seeking other remedies available to them by law, except as provided in subsection (7) of this section." (emphasis added).

■ In construing statutes, a court must give effect to the intent of the General Assembly by first evaluating the language of the statute. Therefore, the statutes must be read and considered as a whole, and construed to give consistent, harmonious, and sensible effect to its parts.

■ When an administrative remedy is provided by statute, a party must follow the statutory procedure "when the matter complained of is within the jurisdiction of the administrative authority." *Brooke v. Restaurant Services, Inc., supra*, 906 P.2d 66, 71 (Colo.1995). However, when the pertinent administrative remedies cannot provide the relief requested, or when the relevant administrative agency does not have the authority to determine the merits of the question raised by the party seeking judicial action, administrative exhaustion is not required. *Brooke v. Restaurant Services, Inc., supra.*

Accordingly, pursuant to these maxims of statutory construction, we must review § 12–36.5–106(7), § 12–36.5–106(8), & § 12–36.5–106(9)(k), C.R.S.1999, together to give "con-

sistent, harmonious and sensible effect" to each part. *Brooke v. Restaurant Services, Inc., supra.*

In *Brooke*, the supreme court addressed issues under the Colorado Anti-discrimination Act (Act), §§ 24–34–301 et seq., C.R.S. 1999, similar to those raised here. There, the supreme court addressed: (1) whether the Act is the exclusive remedy for pursuing sex discrimination claims and (2) whether a party pursuing common law claims related to claims brought under the Act is required to exhaust administrative remedies pursuant to the Act before filing a claim in district court.

The *Brooke* court first determined that because "the Act does not explicitly bar non-Act claims and does not provide a comprehensive scheme for addressing sex discrimination in the workplace," the Act does not preempt other remedies that are otherwise available. *Brooke v. Restaurant Services, Inc.,* 906 P.2d at 70.

The *Brooke* court next addressed whether the claimant was required to exhaust administrative remedies before bringing common law claims related to the Act. The court held that "administrative remedies under the Act must be exhausted only for claims filed pursuant to the Act." *Brooke v. Restaurant Services Inc., supra,* 906 P.2d at 70. The court concluded that because the Colorado Civil Rights Commission (CCRC) did not have jurisdiction "to address common law claims arising out of discriminatory conduct not resulting in an employment-related decision nor authority to grant ... compensatory relief," exhaustion of remedies through the CCRC prior to filing a common law claim with the district court was not necessary. *Brooke v. Restaurant Services, Inc., supra,* 906 P.2d at 71. The court further concluded, "it is futile to require exhaustion of administrative remedies when no such remedies exist," especially where exhaustion would require a claimant to risk having the statute of limitations run on his or her common law claims. *Brooke v. Restaurant Services, Inc., supra,* 906 P.2d at 71–72.

We conclude that *Brooke v. Restaurant Services, Inc., supra* provides the appropriate analytical framework for evaluating whether plaintiffs are required to present their defamation claim to CAC prior to pursuing that common law claim in the district court.

■ *Brooke* is directly analogous to the situation here. As previously discussed, § 12–36.5–106(7), C.R.S.1999, provides that a physician aggrieved by a final board action where the claim alleges unreasonable anti-competitive conduct must pursue remedies on the issue of whether such action constituted anti-competitive conduct before CAC. The language of this section, therefore, limits the jurisdiction of CAC to consider only the issue of anti-competitive conduct.

In contrast, § 12–36.5–106(8), expressly allows a physician to pursue claims that arise out of the final board action but which do not allege anti-competitive conduct. Accordingly, it limits the exhaustion requirement contained in § 12–36.5–106(7).

In addition, because the only remedy available pursuant to § 12–36.5–106(9)(k) is a final order disapproving and setting aside the final action, the General Assembly did not intend for CAC to award compensatory damages for common law claims brought before it. *See Brooke v. Restaurant Services, Inc., supra.*

■ We, therefore, conclude that the General Assembly specifically intended that physicians aggrieved in ways other than as a result of anti-competitive conduct may pursue such claims in the district court without having to exhaust administrative remedies before CAC.

Based on *Brooke,* and the language of § 12–36.5–106(7) & § 12–36.5–106(8), C.R.S. 1999, we also conclude that Pfenninger's defamation claim, though it arises out of the circumstances of the final action by the Board, is independent of his anti-competitive conduct claim. Pursuant to § 12–36.5–106(7), CAC had jurisdiction to determine whether the statements and conduct of defendants constituted anti-competitive conduct with respect to the revocation of Pfenninger's privileges. However, because CAC's inquiry was limited to "the sole issue of whether [the Board's] action resulted from unreasonable anti-competitive conduct," CAC did not have jurisdiction to determine whether the state-

ments were defamatory. Section 12–36.5–106(7), C.R.S.1999.

In addition, § 12–36.5–106(9)(k) does not provide an adequate remedy for Pfenninger's defamation claim, and if he was required to exhaust his administrative remedies before CAC, he would have risked the statute of limitations running on his defamation claim.

Consequently, § 12–36.5–106(8) specifically allows physicians such as Pfenninger who are "otherwise aggrieved" by a final board action to pursue defamation claims in district court without exhausting their administrative remedies before CAC.

Thus, we conclude the trial court incorrectly relied on *Ryals v. St. Mary Corwin Regional Medical Center, supra.* There, as here, a physician sought to litigate common law claims in the district court prior to pursuing his claims before CAC. However, a division of this court rejected the *Ryals* plaintiff's argument and held that pursuant to § 12–36.5–106(7) he was required to exhaust administrative remedies before CAC prior to seeking relief from the district court for his common law claims of breach of contract, promissory estoppel, tortious interference with contractual relations, and outrageous conduct. Specifically, the court found that because the "allegations underlying all of plaintiff's claims were based on the conduct of the [entities involved in the final action]," CAC had jurisdiction over all of plaintiff's claims. *Ryals v. St. Mary Corwin Regional Medical Center,* 987 P.2d at 870.

*Ryals* is legally and factually distinguishable from this case. Pfenninger's defamation claim is factually distinguishable from the claims of the physician in *Ryals* because there the substance of the physician's common law claims was based on the hospital's anti-competitive conduct; thus, the claims were within the jurisdiction of CAC. Here, in contrast, although CAC could determine whether defendants' statements rose to the level of anti-competitive conduct, it could not determine whether they were defamatory.

*Ryals* is legally distinguishable because the court there did not discuss the limiting impact of § 12–36.5–106(8) on § 12–36.5–106(7).

Accordingly, we conclude that the trial court improperly dismissed Pfenninger's defamation claim.

The judgment is reversed, and the cause is remanded for reinstatement of the fourth claim for relief and for further proceedings consistent with this opinion.

Judge JONES and Judge NEY concur.