Ramona L. BROOKE, Petitioner,

v.

**RESTAURANT SERVICES, INC., a Colorado corporation, and Dean C. Peterson, Respondents.**

No. 94SC312.

Supreme Court of Colorado, En Banc.

Sept. 25, 1995.

Ronald E. Gregson, Hugh S. Pixler, Gregson Law Offices, P.C., Denver, for Petitioner.

Dean C. Peterson, Denver, pro se.

Anne T. Sulton, Englewood, for Amicus Curiae Denver NAACP.

Carmen S. Danielson, Boulder, Nora V. Kelly, Denver, for Amici Curiae Colorado

Women's Bar Association and Boulder Women's Bar Association.

Barry D. Roseman, Denver, for Amicus Curiae Employment Lawyers Association.

Gilbert M. Roman, Roman & Benezra, L.L.C., Denver, for Amicus Curiae Colorado Hispanic Bar Association.

MULLARKEY, Justice, delivered the Opinion of the Court.

Petitioner, Ramona Brooke (Brooke), requests certiorari review of the court of appeals' decision in *Brooke v. Restaurant Services, Inc.*, 881 P.2d 409 (Colo.App.1994). In *Brooke*, the court of appeals affirmed the trial court's grant of summary judgment in favor of the respondents, Restaurant Services, Inc. (Restaurant Services) and Dean Peterson (Peterson), president and principal stockholder of Restaurant Services, on Brooke's tort claims arising from her conditions of employment and her subsequent termination from employment. We reverse the judgment of the court of appeals and hold that (1) the Colorado Anti-discrimination Act (the Act), sections 24–34–301, *et seq.*, 10A C.R.S. (1988), is not the exclusive remedy for employment-related sex discrimination; and (2) the Act does not require Brooke to exhaust administrative remedies before filing her claim in state district court.

I.

Restaurant Services hired Brooke in July 1987, as a manager of the Simms Landing restaurant. In early February 1990, she was transferred to manage another restaurant, the Off Bellview Grill, and remained there until she was dismissed in May 1992. During her tenure with Restaurant Services, Brooke alleges that Peterson paid her a lower salary than he paid male managers and that he delayed payment of Brooke's bonuses while paying bonuses to male managers when due. She also alleges that he derided the management ability of women and that he instructed Brooke to hire exclusively female food servers because they were cheaper to employ than their male counterparts and "too dumb to steal." Finally, Brooke alleges that in May 1992, Peterson fired her because she refused to fire a male server on the basis of his sex.

After her termination, Brooke filed a complaint with the federal Equal Employment Opportunity Commission (EEOC) which automatically operated as a joint filing with the Colorado Civil Rights Commission (CCRC). A month later, in June 1992, she filed a complaint in district court. In October 1992, she received a notice of right to sue from the EEOC and filed suit in federal court based on Title VII of the 1964 Civil Rights Act.

In her complaint filed in the state district court, Brooke asserted three claims. First, she alleged that Restaurant Services and Peterson wrongfully discharged her in violation of public policy. Her second claim was that Peterson tortiously interfered with her employment by Restaurant Services. Finally, she alleged outrageous conduct by both defendants. The trial court dismissed Brooke's wrongful discharge claim and her outrageous conduct claim. Then, after trial began, the trial judge granted summary judgment to Peterson and Restaurant Services on Brooke's tortious interference claim.

On appeal, Brooke contested only the grant of summary judgment on her tortious interference claim. She argued that the Act neither provides an exclusive remedy for her claim nor requires her to exhaust administrative remedies before filing her claim in district court. The court of appeals found that administrative remedies under the Act must be exhausted prior to filing any claim in district court. Therefore, it affirmed the judgment of the district court and held that Brooke's tortious interference claim was barred. The court did not reach the issue of whether the Act provides the exclusive remedy for sex discrimination claims.

We granted certiorari on both issues and now reverse the judgment of the court of appeals.[1]

---

1. We granted certiorari on the following issues:
   1. Whether the Court of Appeals erred in holding that claimants must exhaust administrative remedies under the Colorado Anti–Discrimination Act in cases which could be but are not brought pursuant to the Act.

## II.

Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(h); *Cung La v. State Farm Auto. Ins.*, 830 P.2d 1007, 1009 (Colo.1992). Here, while there may remain issues of fact with respect to the merits of Brooke's claims, there are no material issues of fact concerning the issues on which we granted certiorari. Therefore, for purposes of reviewing the dismissal of Brooke's claim, we will treat her allegations of sex discrimination as true and address only the legal questions of whether the Act provided the exclusive remedy for the tortious interference claim and, if so, whether the Act required Brooke to exhaust administrative remedies before filing her claim in district court.

## A.

■ We first address Brooke's contention that the district court erred in finding that the Act is the exclusive remedy for sex discrimination claims.[2] We hold that it is not the exclusive remedy.

■ As a general rule, federal and state remedies for civil rights violations are cumulative, not exclusive. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 48, 94 S.Ct. 1011, 1020–21, 39 L.Ed.2d 147 (1974) (remedies under Title VII, 42 U.S.C. 2000(a), *et seq.*, "supplement, rather than supplant" a claimant's rights under other applicable federal and state statutes). Moreover, the cre-

ation of a private right of action by state statute does not bar pre-existing common law rights of action unless the legislature clearly expressed its intent to do so. *See, e.g., Farmers Group, Inc. v. Williams*, 805 P.2d 419, 423 (Colo.1991) (holding that remedies under Colorado's No–Fault Act are cumulative and do not preempt common law tort claims for bad faith breach of insurance contract). In determining whether a statutory right of action supplants or merely supplements state common law rights, we have held that "statutes in derogation of the common law must be strictly construed, so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication." *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1076 (Colo.1992).

We find no indication that the legislature intended to preclude common law sexual harassment claims by enacting the Anti-discrimination Act. No provision explicitly precludes common law or other statutory claims. Nor does the Act provide a comprehensive scheme for addressing sex discrimination in the workplace that otherwise would indicate "by clear implication" the legislature's intent to preclude common law claims.

■ In particular, the Act does not provide redress to an employee for discriminatory conduct that does not result in an employment-related decision affecting the employee's pay, status, or tenure. As relevant in this case, part 4 of the Act[3] prohibits dis-

<hr>

2. Whether the District Court erred in finding that the Colorado Anti–Discrimination Act provides an exclusive remedy.

**2.** The court of appeals declined to address the exclusivity question because it found that the Act required Brooke to exhaust all administrative remedies before raising her common law claims in district court. However, because requiring exhaustion of administrative procedures before seeking judicial relief serves little purpose unless those remedies are exclusive, *see* discussion *infra* Part B, we address the question of exclusivity first.

**3.** Part 4 also prohibits such discrimination by an "employment agency" for purposes of employment referral, § 24–34–402(1)(b); by a "labor organization" for purposes of exclusion or expulsion from a labor organization, § 24–34–

402(1)(c); by any "employer, employment agency, or labor organization" in employment advertising, § 24–34–402(1)(d); or by any "employer, labor organization, joint apprenticeship or vocational school" in training or retraining programs, § 24–34–402(1)(f), (g); and, with some limitation, prohibits termination of an employee due to that employee's engaging in any lawful activity off the premises of the employer during non-working hours, § 24–34–402.5. Parts 5 to 7 prohibit, respectively, housing practices that discriminate on the basis of handicap, race, creed, color, sex, marital status, religion, national origin, or ancestry, § 24–34–502; discrimination in places of public accommodation on the basis of handicap, race, creed color, sex, marital status, national origin, or ancestry, § 24–34–602; or the advertisement of such discriminatory practices, § 24–34–702.

crimination by employers on grounds of "handicap, race, creed, color, sex, age, national origin, or ancestry" for purposes of hiring, discharge, promotion, demotion or compensation. § 24–34–402(1)(a), 10A C.R.S. (1994 Supp.). In addition, the Act forbids

> any person, whether or not an employer, an employment agency, a labor organization, or the employees or members thereof:
>
> (I) To aid, abet, incite, compel, or coerce the doing of any act defined in this section to be a discriminatory or unfair employment practice;
>
> (II) To obstruct or prevent any person from complying with the provisions of this part 4 or any order issued with respect thereto;
>
> (III) To attempt, either directly or indirectly, to commit any act defined in this section to be a discriminatory or unfair employment practice;
>
> (IV) To discriminate against any person because such person has opposed any practice made a discriminatory or an unfair employment practice by this part 4, because he has filed a charge with the commission, or because he has testified, assisted, or participated in any manner in an investigation, proceeding, or hearing conducted pursuant to parts 3 and 4 of this article; . . . .

§ 24–34–402(1)(e). However, if an employee is subjected to verbal or physical abuse in the workplace on the basis of gender, but is not hired, fired, promoted, demoted, or compensated on that basis, the Act provides no recourse.

Furthermore, remedies under the Act for individuals subjected to sex discrimination on the job are only incidental to the Act's primary purpose of eradicating discriminatory practices by employers. If the CCRC finds that there is probable cause to credit the allegations of an individual's claims of discrimination, it first attempts to eliminate the practice by "conference, conciliation, and persuasion." § 24–34–306(2). If that method fails, the primary remedy for discriminatory practices under the Act is a cease and desist order. § 24–34–306(9). Other remedies authorized by the Act are limited to:

> affirmative action regarding hiring, reinstatement, or upgrading of employees, with or without back pay, the referring of applicants for employment by any respondent employment agency, the restoration to membership by any respondent labor organization, the admission to or continuation in enrollment in an apprenticeship program, on-the-job training program, or a vocational school, the posting of notices, and the making of reports as to the manner of compliance.

§ 24–34–405. The Act permits but does not require an award of back pay and does not authorize the CCRC to award damages that might otherwise be available in a common law action.

Similarly, the duties of the CCRC, in addition to enforcing the compulsory provisions of the Act, are geared toward eliminating discriminatory practices on a broad scale rather than addressing the harm such practices cause on a case-by-case basis. The Act requires the CCRC to "investigate and study the existence, character, causes, and extent of unfair or discriminatory practices" and to "formulate plans for the elimination thereof by educational or other means"; to "issue publications and reports . . . as in its judgment will tend to promote goodwill among the various racial, religious, age, and ethnic groups of the state and which will tend to minimize or eliminate discriminatory or unfair practices"; to recommend policies and legislation to the governor and the legislature; and "to cooperate . . . with other agencies and organizations . . . in the planning and conducting of educational programs designed to eliminate racial, religious, cultural, age and intergroup tensions." § 24–34–305(1). These duties clearly do not indicate a legislative intent to exclusively address the impact of discrimination on the individual claimant. *See also, Red Seal Potato Chip Co. v. Colorado Civil Rights Comm'n,* 44 Colo.App. 381, 618 P.2d 697, 701 (1980) (analyzing the structure of the Act and concluding that "the Act was intended to provide a mechanism by which Colorado could eradicate the underlying causes of discrimination and halt discriminatory practices, and . . . was not intended to provide relief to individual claimants").

Because the Act does not explicitly bar non-Act claims and does not provide a comprehensive scheme for addressing sex discrimination in the workplace, we cannot conclude that the legislature intended the Act to preempt the remedies that are otherwise available to victims of sexually discriminatory conduct in the work place. Therefore, we hold that the Colorado Anti-discrimination Act does not provide an exclusive remedy for sex discrimination claims.[4]

### B.

■ Having determined that the Act is not the exclusive remedy for sex discrimination claims, we next address the issue of whether a claimant must exhaust administrative remedies under the Act before asserting common law claims in district court. We hold that administrative remedies under the Act must be exhausted only for claims filed pursuant to the Act.

The section of the Act at issue in this case provides:

No person may file *a civil action* in a district court in this state based on an alleged discriminatory or unfair *practice prohibited by parts 4 to 7 of this article without first exhausting the proceedings and remedies available to him under this part 3* unless he shows, in an action filed in the appropriate district court, by clear and convincing evidence, his ill health which is of such a nature that pursuing administrative remedies would not provide timely and reasonable relief and would cause irreparable harm.

§ 24–34–306(14), 10A C.R.S. (1994 Supp.) (emphasis added).

The court of appeals held that under the plain language of this provision "[n]o claim can be filed in district court until administrative remedies have been exhausted absent a showing that ill health would not allow timely and reasonable relief." *Brooke,* 881 P.2d at 411.[5] Brooke contends that this provision merely requires exhaustion of administrative remedies for claims which are filed pursuant to the Act. Under her theory, other claims seeking relief at common law are not affected by the exhaustion requirement. We agree with Brooke.

■ In construing statutes, we must give effect to the intent of the legislature by looking first at the language of the statute. *Moody v. Corsentino,* 843 P.2d 1355, 1370 (Colo.1993). A statute must be read and considered as a whole, *People v. District Court,* 713 P.2d 918, 921 (Colo.1986), and, where possible, it should be construed to give consistent, harmonious, and sensible effect to all of its parts. *Massey v. District Court,* 180 Colo. 359, 364, 506 P.2d 128, 130 (1973). In cases of ambiguity, a court may also be guided by "the consequences of a particular construction." § 2–4–203, 1B C.R.S. (1980).

Contrary to the court of appeals' interpretation, the plain language of section 24–34–306(14) does not require exhaustion of administrative remedies except with respect to claims brought under the Act. The Act requires exhaustion of administrative remedies before bringing claims "*based on* an alleged discriminatory or unfair practice prohibited by *parts 4 to 7 of this article.*" § 24–34–306(14) (emphasis added). While the court of appeals read this clause to require exhaustion of administrative remedies before raising claims *arising out of* any discriminatory practices enumerated in the Act, it is more reasonable to read this clause as a reference to all claims brought *pursuant to* the Act.[6]

---

**4.** The facts of this case relate to claims of sex discrimination. By its terms, however, the Act applies to discrimination by employers on grounds of "handicap, race, creed, color, sex, age, national origin, or ancestry." § 24–34–402(1)(a), 10A C.R.S. (1994 Supp.). Our analysis here would be applicable to the other employment-related discrimination prohibited by the Act.

**5.** The court of appeals found that the legislative history of the provision also supported this interpretation. Resort to legislative history is not appropriate if the statutory language is clear and unambiguous. *Property Tax Administrator v. Production Geophysical Services, Inc.,* 860 P.2d 514, 517 (Colo.1993). Even if it were relevant, the legislative history is inconclusive in this case. We decline to discuss it.

**6.** The standard dictionary definition of "base" supports this interpretation. When used as a verb with "on" or "upon," "base" means "to use as a base or basis for." *Webster's Third New International Dictionary* 180 (Merriam–Webster, Inc. 1986). Applying this definition, the claims

When the legislature has intended to preclude all claims of a certain type or all claims which could have been pled as that type, it has used clear language to that effect. For example, the Governmental Immunity Act, sections 24–10–101 to 120, 10A C.R.S. (1988), provides that "[a] public entity shall be immune from liability in all claims for injury *which lie in tort or could lie in tort.*" § 24–10–106(1). No such language appears in the Act now before us and we conclude that the legislature did not intend non-Act claims to be subject to the exhaustion provision of the Act. Thus, we decline to find that the plain language of the provision requires exhaustion of administrative remedies under the Act before any other sex discrimination claim may be filed in district court.

This interpretation is consistent with the Act read as a whole. As discussed above, the Act is not designed primarily to compensate individual claimants, but to eliminate unfair or discriminatory practices as defined by the Act. Any benefits to the individual obtained by the CCRC are merely incidental. *See* discussion above in part A. The CCRC has neither jurisdiction to address common law claims arising out of discriminatory conduct not resulting in an employment-related decision nor authority to grant an claimant compensatory relief. *Id.* Given these limitations in the scope of the Act and the basic principle that remedies under the Act are cumulative and not exclusive, we find that it would serve no purpose to require a claimant to exhaust administrative remedies under the Act before filing non-Act claims in district court.

We reach this conclusion for several reasons. First, the policy considerations that support administrative exhaustion are not promoted by requiring exhaustion in this case. In most instances, "[w]here administrative remedies are provided by statute, the statutory procedure must be followed when the matter complained of is within the jurisdiction of the administrative authority." *Horrell v. Department of Admin.*, 861 P.2d 1194, 1197 (Colo.1993) (citations omitted). "This rule prevents piecemeal application for judicial relief and unwarranted interference

for which the Act requires exhaustion are those

by the judiciary in the administrative process." *Id.* However, when "available administrative remedies are ill-suited for providing the relief requested" or "when the administrative agency does not have the 'authority to pass on the question raised by the party seeking judicial action,'" we have recognized that the rationale behind requiring parties to exhaust available administrative remedies is ill-served. *Id.* (citations omitted)

Under the Act, requiring claimants to wait to file common law claims until administrative remedies under the Act have been exhausted fails to serve these purposes. Exhaustion of administrative remedies in this case will not prohibit piecemeal adjudication, nor will it prevent judicial interference with the administrative process because the CCRC has no jurisdiction to address these claims. Furthermore, because the Act does not authorize CCRC to award compensatory and punitive relief, such as future wages and benefits or compensation for emotional distress and punitive damages, the administrative proceeding under the Act is cannot give Brooke the relief she requests. *Accord, Rojo v. Kliger,* 52 Cal.3d 65, 276 Cal.Rptr. 130, 144, 801 P.2d 373, 387 (1990) (holding that, although an employee must exhaust administrative remedies under California's Fair Employment and Housing Act before bringing suit on a cause of action under the Act or seeking the relief provided therein, "exhaustion is not required before filing a civil action for damages alleging nonstatutory causes of action"). It is futile to require exhaustion of administrative remedies when no such remedies exist.

In addition, requiring a claimant to wait to assert these claims would be contrary to the Act's stated purpose of eradicating employment discrimination because it would place a victim of employment-related discrimination in a worse position than an aggrieved employee who is not a victim of discrimination. Under the court of appeals' opinion, a person asserting common law claims not involving discrimination could proceed directly to court. However, a claimant alleging common law claims based on discrimination would be required to exhaust administrative remedies

with a legal basis in parts 4 to 7 of the Act.

and risk the running of the statute of limitations on those common law claims even though the claimant was not seeking relief under the Act. *See* § 24–34–306(11) (allowing CCRC to retain jurisdiction over claims up to 550 days after filing before providing a formal hearing). Conversely, because other victims of workplace torts or wrongful termination are not required to exhaust remedies under the Act, such employees are not subject to the six-month limitations period applicable to claims filed under the Act. *See* § 24–34–403, 10A C.R.S. (1994 Supp.) Instead, they have as long as three years to file a civil action. *See* §§ 13–80–101(1)(a), –102(1)(a), 6A C.R.S. (1987). Thus, as amici point out, requiring a claimant to exhaust administrative remedies before filing any common law claims in district court would disadvantage victims of discrimination rather than augment the remedies against discriminatory employers, as the Act intended.

For these reasons, we hold that section 24–34–306(14) was intended to require only that an individual claimant exhaust administrative remedies for claims brought pursuant to the Act. Thus, we reverse the court of appeals' judgment affirming dismissal of Brooke's tortious interference with contract claim on this basis.[7]

### III.

For the foregoing reasons, we hold that (1) the Colorado Anti-discrimination Act does not provide the exclusive remedy for sex discrimination claims; and (2) the Act requires exhaustion of administrative remedies only before filing claims that are brought pursuant to the Act. Accordingly, we reverse the judgment of the court of appeals and return this case to that court for remand to the trial court for trial on the merits.

---

7. Brooke also argues that she satisfied the exhaustion requirement because she received her notice of right to sue from the EEOC before her case went to trial in the district court. Because

Brooke's claim was not brought pursuant to the Act, we do not determine whether she has satisfied the exhaustion requirement of section 24–34–306(14) with respect to that claim.