Margaret "Peggy" CASPAR, Plaintiff,

v.

LUCENT TECHNOLOGIES, INC. and Avaya, Inc. d/b/a Avaya Communications, Inc., Defendants.

No. CIV.A. 01WM2240MJW.

United States District Court, D. Colorado.

Sept. 2, 2003.

John A. Culver, Benezra & Culver, LLC, Lakewood, CO, for plaintiff.

Dirk W. deRoos, Elizabeth A. Mac-Donald, Faegre & Benson, United States District Court, Denver, CO, for defendants.

## SUPPLEMENTAL ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MILLER, District Judge.

This matter is before me on defendants Lucent Technologies, Inc. and Avaya, Inc.'s motion for summary judgment on the claim of wrongful discharge in violation of public policy.[1] In my May 27, 2003 order on Lucent's motion, I concluded that plaintiff Margaret Caspar (Caspar) was withdrawing her claim for wrongful discharge when she conceded it was "co-extensive" with her Title VII claim. *See* Order, n. 1. Caspar immediately filed a Clarification Regarding Plaintiff Caspar's Wrongful Discharge in Violation of Public Policy Claim explaining that she did not intend to forego the wrongful discharge claim. Lucent filed a response on June 9, 2003, and both parties have submitted further argument on this issue in their respective objections to the other's proposed jury instructions.

I accept that I misread Caspar's intent and conclude that she did not withdraw this claim. Consequently I must revisit Lucent's motion for summary judgment.

The issue presented is whether a Title VII claimant may also state a wrongful discharge claim under state law requiring proof of the same elements. I have reconsidered the parties' arguments concerning this issue as supplemented by their recent filings and conclude that, assuming Lucent did unlawfully discriminate against Caspar because of her gender, her wrongful discharge claim should nevertheless be dismissed as a matter of law.

### Background

Caspar was a longtime employee of Lucent and its predecessors. Born in 1955, she began working at the company in 1974.

---

1. For purposes of this order, I will refer to the    defendants collectively as Lucent.

In 1998, Caspar moved to Colorado to serve as Lucent's Area Sales Vice President (ASVP) for the Denver territory. The ASVP position is a director-level position on Lucent's salary scale.

Following a corporate reorganization in 1999, Caspar began reporting to Marcy Mobley (Mobley), who was then a regional vice president for Lucent. In 2000, Lucent's regional vice presidents, including Mobley, were informed that Lucent was going to sell the small business division of the company. Due to the resulting loss of the majority of their accounts, Lucent asked its regional vice presidents to restructure their regions accordingly. Mobley concluded that the loss of revenue resulting from the sale of the small business division required consolidation of two existing territories and elimination of an ASVP position.

After examining each possible combination of territories within her region, Mobley decided to combine the Denver and Phoenix territories. Following a review process, Mobley ultimately chose to retain Dennis Clevenger, the Phoenix ASVP, to serve as the ASVP for the newly combined Denver–Phoenix territory.

When informed of the decision to eliminate her position, Caspar filed this lawsuit, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–1–2000e–17 (Title VII), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA), and asserting a state law claim for wrongful discharge in violation of Colorado public policy. Lucent filed a motion for summary judgment. On December 4, 2002, the parties stipulated to the dismissal of Caspar's claim under the ADEA. *See* Docket Entry No. 70. By my May 27, 2003 order I had otherwise denied Lucent's motion for summary judgment on Caspar's Title VII claim.

### *Discussion*

Caspar's wrongful discharge in violation of public policy claim is based on her alleged wrongful termination by Lucent because of her sex and age. Complaint, ¶¶ 30–31. Generally, there is no question that gender or age discrimination is against the public policies established by both Title VII and the Colorado Anti–Discrimination Act. *See* 42 U.S.C. § 2000e–1, *et seq.;* Colo.Rev.Stat. §§ 24–34–301, *et seq.*

As Caspar confirms by her proposed jury instructions, however, the wrongful discharge claim would be virtually identical to her Title VII claim. *See* Plaintiff's Proposed Jury Instructions Nos. 1, 6, 7 and 8. Caspar openly acknowledges that the purpose for the state law claim is to duplicate the discrimination claim but avoid the damage limitations found in Title VII.

Although requested, Caspar provides no reported authority by the Colorado Supreme Court, Colorado Court of Appeals, District of Colorado, or the Tenth Circuit allowing a plaintiff in a Title VII action to pursue a separate tort cause of action based on the same facts as applied to legal elements identical to the Title VII claim. Instead, Caspar asserts that claims similar to hers have been recognized by the Colorado Supreme Court in *Brooke v. Rest. Servs., Inc.,* 906 P.2d 66 (Colo.1995).[2]

In *Brooke,* the Colorado Supreme Court held that the Colorado Anti–Discrimination Act does not bar preexisting common law causes of action. 906 P.2d at 68. The

---

**2.** Caspar also refers to an unpublished opinion of my colleague, Chief Judge Lewis T. Babcock. *Van De Wege v. Storage Tech. Corp.,* No. 97–B–1599 (D.Colo. October 8, 1998) (order denying motion for partial summary judgment on wrongful discharge claim). This case raised a similar issue, but its result is not persuasive given the reasoning of the cases cited *infra.*

court concluded that federal and state remedies were cumulative, not exclusive, and allowed the plaintiff to pursue her tortious interference claim. The court did not consider the plaintiff's claim of wrongful discharge in violation of public policy, because the claim had been dismissed by the trial court and the plaintiff did not appeal that dismissal. Instead, the court only found that the anti-discrimination remedies did not preempt tortious interference with employment claims, the elements of which are much different than a Title VII claim. Accordingly, Caspar's reliance on *Brooke* is misplaced.

■ Moreover, Caspar's pursuit of the wrongful discharge claim in addition to her Title VII claim is contrary to established limitations on the nature and reach of the state law claim. The concept of a wrongful discharge evolved as an exception to the at-will employment doctrine and is designed to provide a remedy for unlawful adverse employment actions where no cause of action for breach of contract would lie. The Colorado courts have expressly disallowed its application where a statute provides a wrongful discharge remedy. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 107, n. 5 (Colo.1992) (in articulating the elements of a wrongful discharge claim, the court confirmed there would be no public policy exception to the at-will employment doctrine when a statute at issue provides a remedy). *See also Gamble v. Levitz*, 759 P.2d 761, 765 (Colo. Ct.App.1988) (summary judgment proper dismissing claim of wrongful discharge based on alleged disability discrimination; no public policy exception available in light of statutory remedy); *Corbin v. Sinclair*, 684 P.2d 265, 267 (Colo.Ct.App.1984).[3]

■ Given the availability of Caspar's Title VII remedies, therefore, Colorado authority indicates the wrongful discharge claim is not available.

■ In any case, Caspar's assertion that the elements of her wrongful discharge claim are the equivalent of a Title VII claim is belied by the elemental definition of the state law claim as established in Colorado. In *Martin Marietta*, the Colorado Supreme Court set forth the following elements that a wrongful discharge plaintiff must prove: (1) the employer directed the employee to perform an illegal act as part of his work-related duties or prohibited that employee from performing a public duty or exercising a job-related right or privilege; (2) the directed action or prohibition would violate a specific statute or undermine clearly-expressed public policy relating to the employee's responsibilities as a citizen or the employee's rights and privileges as a worker; (3) the employee was terminated for refusing to perform the action directed or for performing a public duty or exercising a job-related right or privilege despite the employer's prohibition; and (4) the employer knew or should have known that the employee's refusal to comply was based on the employee's reasonable belief that the action was illegal, contrary to state policy, or violative of the employee's legal rights and privileges as a worker. 823 P.2d at 109.

The Colorado Jury Instructions distinguish between the various grounds for a wrongful discharge claim, providing separate instructions for a claim based on an adverse job consequence resulting from a failure to follow an employer's direction, C.J.I. 4th, § 31:9, and for a claim based on

**3.** Notwithstanding the *Van De Wege* decision discussed in note 2, this limitation has been previously recognized by Chief Judge Babcock. *See Malone v. Signal Processing Technologies, Inc.*, 826 F.Supp. 370, 379 (D.Colo. 1993) (public policy wrongful discharge exception not available in gender discrimination case because statute provides remedy); *Smith v. Colorado Interstate Gas Co.*, 777 F.Supp. 854, 858 (D.Colo.1991) (same).

an adverse job consequence resulting from the exercise of a specific statutory right or privilege or the performance of a specific statutory duty, C.J.I. 4th, § 31:10. This case does not involve the former situation, as Caspar does not claim she was terminated because she refused to follow an employer directive. Caspar likewise does not claim she was discharged for performing some specific duty or exercising some right such as filing a worker's compensation claim. *See Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367 (Colo.App.1989). At best, she could only assert a claim in the negative, that is, that she was terminated for exercising the right *not* to be discriminated against because of her gender or age. This is not Caspar's claim, and no Colorado authority suggests that a Title VII claim could be so contorted to support a state law tort claim.

The cases identify many different circumstances that support a claim for wrongful discharge in violation of public policy, but none include the exercise of a right to be free of employer discrimination. *See, e.g., Rocky Mountain Hosp. & Med. Serv. v. Mariani,* 916 P.2d 519 (Colo.1996) (approving wrongful discharge claim based on accountant's refusal to violate code of professional conduct); *Martin Marietta,* 823 P.2d at 107 (proscribing termination for refusing to engage in illegal conduct); *Johnson v. Jefferson County Bd. of Health,* 662 P.2d 463 (Colo.1983) (barring government employer from terminating at-will employee for exercising free speech); *Jones v. Stevinson's Golden Ford,* 36 P.3d 129 (Colo.Ct.App.2001) (approving wrongful discharge claim based on employee's refusal to violate Consumer Protection Act and Motor Vehicle Repair Act). *See also Cummins v. EG & G Sealol, Inc.,* 690 F.Supp. 134 (D.R.I.1988) (recognizing a claim based on the employee's whistleblowing activity or other conduct exposing the employer's wrongdoing); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975) (approving claim based on employee's refusal to forsake the performance of an important public duty); *Frampton v. Cent. Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973) (approving a claim based on employee's refusal to forgo the exercise of a job-related legal right or privilege).

I conclude that Caspar has failed to state a claim for wrongful discharge in violation of public policy in accordance with Colorado law. Moreover, this failure may not be cured by simply restating her Title VII claim as a state law tort claim. To permit a plaintiff to escape Title VII limitations by such sleight of hand would constitute judicial amendment of legislative policy.

Accordingly, it is ordered that my Order, issued May 27, 2003 is amended as follows:

1. Defendants' motion for summary judgment is granted in part and denied in part;

2. Plaintiff's claim for wrongful discharge in violation of public policy is dismissed; and

3. Plaintiff's claims for gender discrimination and gender plus age discrimination are not dismissed and have proceeded to trial.