The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 14, 2019

## 2019COA172

**No. 18CA1987, *Williams v. Elder* — Employment — Colorado Anti-Discrimination Act — Age Discrimination — Compensatory Damages; Government — Colorado Governmental Immunity Act**

In this employment discrimination case, a division of the court of appeals considers for the first time whether the Colorado Anti-Discrimination Act (CADA) permits the recovery of compensatory damages for age and retaliation claims against a public sector employer or whether such claims are barred by the Colorado Governmental Immunity Act (CGIA). The division concludes that the plain language of section 24-34-405(3)(g), C.R.S. 2019, precludes a plaintiff from recovering compensatory damages for an age discrimination claim. The division further concludes that the CADA permits the recovery of compensatory damages for a retaliation claim and that the CGIA does not bar recovery. Finally,

the division disagrees with the majority in *Houchin v. Denver Health & Hospital Authority*, 2019 COA 50M, and concludes that section 24-34-405(8)(g) exempts compensatory damages for discrimination claims (except for age discrimination) from the CGIA. The order is affirmed in part and reversed in part.

COLORADO COURT OF APPEALS                                    **2019COA172**

Court of Appeals No. 18CA1987
El Paso County District Court No. 18CV30745
Honorable Erin Sokol, Judge

Timothy Williams,

Plaintiff-Appellee,

v.

Bill Elder, in his official capacity as Sheriff of El Paso County, Colorado; and El Paso County Sheriff's Office

Defendants-Appellants.

ORDER AFFIRMED IN PART AND REVERSED IN PART

Division I
Opinion by JUDGE FREYRE
Pawar and Graham*, JJ., concur

Announced November 14, 2019

Livelihood Law, LLC, Euell Thomas, Rachel E. Ellis, Denver, Colorado, for Plaintiff-Appellee

Diana K. May, County Attorney, Kenneth R. Hodges, Senior Assistant County Attorney, Brian E. Schmid, Senior Assistant County Attorney, Peter A. Lichtman, Senior County Attorney, Colorado Springs, Colorado, for Defendants-Appellants

Cornish & Dell'olio, P.C., Ian D. Kalmanowitz, Bradley J. Sherman, Colorado Springs, Colorado, for Amicus Curiae Colorado Plaintiff Employment Lawyers Association

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1     This employment discrimination case presents an issue of first impression — whether a complaint that seeks compensatory damages under the Colorado Anti-Discrimination Act (CADA) is barred by the Colorado Governmental Immunity Act (CGIA). Defendants, El Paso County Sheriff Bill Elder and the El Paso County Sheriff's Office (collectively EPSO), challenge the district court's order finding that the relief requested by plaintiff, Timothy Williams, is equitable and, therefore, not subject to the CGIA.  For the reasons detailed below, we affirm in part and reverse in part.

## I.     Factual and Procedural Background

¶ 2     According to the complaint, the EPSO hired Mr. Williams in 2002 and promoted him to the rank of lieutenant in 2015.  On March 17, 2016, Sheriff Elder ordered all EPSO employees to complete a survey that asked for their retirement eligibility date. Mr. Williams reported that his retirement eligibility date was June 1, 2018.

¶ 3     On November 6, 2016, Sheriff Elder met with Mr. Williams, made derogatory remarks about wanting employees to "check out," and told Mr. Williams that if he "couldn't cut it," he needed to "get out."  The next day, Sheriff Elder demoted Mr. Williams from

1

lieutenant to senior deputy. To avoid adverse retirement benefit consequences, Mr. Williams resigned on November 8, 2016. The EPSO replaced him with a younger employee. Mr. Williams then filed age discrimination charges with the Colorado Civil Rights Division and Equal Employment Opportunity Commission, on April 4, 2017.

¶ 4 While those charges were pending, the EPSO received a Colorado Open Records Act (CORA) request for documents concerning the Commission on Accreditation of Law Enforcement Agencies. In its response, the EPSO alleged that Mr. Williams took accreditation documents with him when he retired. Mr. Williams claimed this was false and that the assertion constituted retaliation for alleging age discrimination.

¶ 5 On March 27, 2018, Mr. Williams filed his complaint in district court alleging (1) age discrimination and (2) retaliation related to the CORA request. The EPSO filed a motion to dismiss under C.R.C.P. 12(b)(5). Then, the court permitted Mr. Williams to amend his complaint. The EPSO moved to dismiss the amended complaint under C.R.C.P. 12(b)(1) and (b)(5), alleging that Mr. Williams failed to exhaust his administrative remedies on the retaliation claim,

failed to state a claim for relief, and both compensatory damages and front pay were legal remedies barred by the CGIA.

¶ 6    In a detailed written order, the district court found that Mr. Williams had exhausted all his administrative remedies and that his complaint stated claims for relief, but it ordered supplemental briefing on whether his requested relief — front pay and compensatory damages — were legal remedies barred by the CGIA. In a second thorough written order, the district court found that front pay is an equitable remedy not barred by the CGIA. It further found that under the 2013 amendments to the CADA, compensatory damages are not barred by the CGIA.

¶ 7    The EPSO seeks review of this second order under section 24-10-108, C.R.S. 2019. After briefing was completed, a division of this court announced *Houchin v. Denver Health & Hospital Authority*, 2019 COA 50M, ¶ 20, in which the majority held that back pay is an equitable remedy, exempt from the CGIA. It further held that while the 2013 amendments to the CADA expanded the remedies available to victims of discrimination to include compensatory damages, such expansion did not apply to the Denver Health and Hospitals Authority (a political subdivision of the

state), but only to Colorado state employers. *Id.* at ¶ 22. Thus, it concluded that Houchin's request for compensatory damages was a legal remedy subject to the CGIA. *Id.* at ¶ 25.

¶ 8    The partial dissent disagreed with this construction of "state," believed that "state" includes political subdivisions of the state, and concluded that subsection 8(g) of the CADA, making the CGIA inapplicable to CADA claims, should allow Houchin to seek compensatory damages. *Id.* at ¶¶ 28-32 (Berger, J., concurring in part and dissenting in part).

¶ 9    We requested supplemental briefing on *Houchin*'s application to this case. After considering the supplemental briefs and the statutory language, we conclude that the 2013 amendments require us to analyze the age discrimination and retaliation claims separately. We first conclude that a plaintiff may not obtain compensatory damages for an age discrimination claim under the CADA because the plain language of section 24-34-405(3)(g), C.R.S. 2019, limits the remedies for such claims to those set forth in section 24-34-405(2), which do not include compensatory damages. Therefore, we reverse the portion of the court's order concluding that compensatory damages for age discrimination are not subject

4

to the CGIA. We conclude that the CGIA bars the recovery of compensatory damages for age discrimination.

¶ 10 However, we conclude that front pay for an age discrimination claim constitutes an equitable remedy under the CADA and is not barred by the CGIA. Therefore, we affirm the portion of the court's order denying EPSO's motion to dismiss for age discrimination related to front pay.

¶ 11 We next conclude that the CADA does not restrict the remedies for a retaliation claim and that this claim is subject to section 24-34-405(8)(g). We conclude that compensatory damages under the CADA are merely incidental to CADA's fundamental purpose of eliminating discriminatory practices in the workplace. We also agree with the partial dissent in *Houchin* that the word "state" in subsection (8)(g) includes agencies like the EPSO. *See Houchin,* ¶¶ 58-59 (Berger, J., concurring in part and dissenting in part). Accordingly, we affirm the court's order denying EPSO's motion to dismiss the retaliation claim.

## II. Age Discrimination

¶ 12 We first address the EPSO's challenge to Mr. Williams' age discrimination claim because the General Assembly has chosen to

treat this form of discrimination differently from others. Under the plain language of section 24-34-405(3)(g), which limits the remedies for age discrimination to those set forth in section 24-34-405(2), we conclude that Mr. Williams may not obtain compensatory damages for this claim and reverse this portion of the order. However, because section 24-34-405(2)(a)(II) plainly provides front pay relief, we affirm that portion of the court's order denying EPSO's motion to dismiss this claim.

### A. Standard of Review and Law

¶ 13 Because the district court decided a question of law, we review the issue de novo. *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1171 (Colo. 2000). We read statutes "with a goal of giving 'consistent, harmonious, and sensible effect to all its parts.'" *People v. Summer*, 208 P.3d 251, 254 (Colo. 2009) (quoting *People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986)). "But we avoid construing a statute to render any of its words superfluous or to lead to an absurd result." *People in Interest of M.C.*, 2012 COA 64, ¶ 13.

¶ 14 The CGIA provides public entities, like the EPSO, immunity against all "claims for injury which lie in tort or could lie in tort," subject to nine exceptions not at issue. § 24-10-106(1), C.R.S.

6

2019.  True tort claims seek compensation for injuries caused by wrongful conduct that has been recognized as detrimental to an ordered society.  *See Castro v. Lintz*, 2014 COA 91, ¶ 27.  The purpose of the CGIA is to limit the potential liability of public entities and the overburdening of taxpayers for compensatory damages in tort.  § 24-10-102, C.R.S. 2019.

¶ 15    In contrast, CADA claims, while similar to torts, are "not designed primarily to compensate individual claimants."  *Connors*, 993 P.2d at 1174.  Instead, their purpose is "to fulfill the 'basic responsibility of government to redress discriminatory employment practices on the basis of race, creed, color, sex, age, national origin, or ancestry.'"  *Id.* (quoting *Colo. Civil Rights Comm'n ex rel. Ramos v. Regents of the Univ. of Colo.*, 759 P.2d 726, 731 (Colo. 1988)).[1] Thus, "any benefits to an individual claimant, such as the recovery of back pay, are 'merely incidental' to [CADA's] greater purpose of eliminating workplace discrimination."  *Connors*, 993 P.2d at 1174 (quoting *Brooke v. Rest. Servs., Inc.*, 906 P.2d 66, 71 (Colo. 1995)).

---

[1] Section 24-34-402(1)(a) has been amended since *Connors* to include disability, sexual orientation, and religion.  Ch. 295, sec. 2, § 24-34-402(1)(a), 2007 Colo. Sess. Laws 1254.

The CADA remedies, therefore, are equitable in nature, do not sound in tort, and are not barred by the CGIA. *Id.* at 1176-77.

¶ 16    In 2013, the General Assembly expanded the remedies available under the CADA to include punitive and compensatory damages. Ch. 168, sec. 1, § 24-34-405, 2013 Colo. Sess. Laws 550. A claimant may now seek compensatory and punitive damages against an employer who "is found to have engaged in an intentional discriminatory or unfair employment practice . . . ." § 24-34-405(3)(a).[2] As relevant here, section 24-34-405(3)(g) provides as follows:

> In a civil action involving a claim of discrimination based *on age*, the plaintiff is entitled only to the relief authorized in subsection (2) of this section . . . if the court finds that the defendant engaged in a discriminatory or unfair employment practice based on age.

(Emphasis added.)

¶ 17    Section 24-34-405(2)(a) provides:

> In addition to the relief authorized by section 24-34-306(9), the commission or the court may order affirmative relief that the

---

[2] Punitive damages, not at issue here, may not be sought against state or political subdivision employers. § 24-34-405(3)(b)(I), C.R.S. 2019.

commission or court determines to be appropriate, including the following relief, against a respondent who is found to have engaged in an unfair or discriminatory employment practice:

(I) Reinstatement or hiring of employees, with or without back pay. If the commission or court orders back pay, the employer, employment agency, or labor organization responsible for the discriminatory or unfair employment practice shall pay the back pay to the person who was the victim of the practice.

(II) *Front pay*; or

(III) Any other equitable relief the commission or court deems appropriate.

(Emphasis added.)

¶ 18    Section 24-34-405(3)(e) provides:

Compensatory or punitive damages awarded pursuant to this subsection (3) are in addition to, and do not include, front pay, back pay, interest on back pay, or any other type of relief awarded pursuant to subsection (2) of this section.

¶ 19    The 2013 amendments also added section 24-34-405(8)(g), which provides:

A claim filed pursuant to this subsection (8) by an aggrieved party against the state for compensatory damages for an intentional unfair or discriminatory employment practice is not subject to the "Colorado Governmental Immunity Act", article 10 of this title.

9

## B. Analysis

¶ 20     We conclude that the plain language of section 24-34-405(3)(g) limits age discrimination remedies to those enumerated in subsection (2). And, as relevant here, subsection (2) permits relief for front pay, but does not include compensatory damages as stated in subsection (3)(e). To the extent the EPSO asserts that front pay "sounds in tort," is a legal remedy, and is subject to the CGIA, we disagree, because the statutory language refutes that assertion. Therefore, we affirm the court's order permitting Mr. Williams to seek front pay for his age discrimination claim, but we reverse the court's order as to his compensatory damages request and conclude that it is barred by the CGIA.

## III. Retaliation Claim

¶ 21     The EPSO contends that compensatory damages and front pay under the CADA sound in tort or could sound in tort, and, thus, are legal remedies barred by the CGIA. It urges us to follow the *Houchin* majority and to hold that compensatory damages are a legal remedy subject to the CGIA.

¶ 22     The *Houchin* majority narrowly construed *Connors* and reasoned that "the type of claims asserted, and the nature of the

relief sought by the plaintiff, determine[] the framework for deciding whether the CGIA applie[s]." ¶ 18. It then held that compensatory damages requested under the CADA are not equitable in nature but constitute relief for personal injuries "suffered as a consequence of prohibited conduct" and, thus, were subject to the CGIA. *Id.* at ¶ 20 (quoting *Connors*, 993 P.2d at 1176). In the majority's view, the CGIA bars some CADA claims for relief (compensatory damages) and not others (equitable claims like back pay and reinstatement).

¶ 23    Taking a broader view of *Connors*, the partial dissent reasoned that whether a statute is subject to the CGIA should be determined not only by looking at the nature of the relief sought, but also by examining the "'purposes of [the statute]' and the 'nature of the injuries.'" *Id.* at ¶ 35 (Berger, J., concurring in part and dissenting in part) (quoting *Connors*, 993 P.2d at 1173, 1175). Recognizing that we are not bound by the majority in *Houchin, People v. Smoots*, 2013 COA 152, ¶ 21, we agree with the partial dissent, because its reasoning is supported by supreme court precedent subsequent to *Connors* and is consistent with the *Connors* holding. *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 690 (Colo. 2008) ("[T]he question of coverage by the [CGIA] ultimately turns on the

11

source and nature of the government's liability, or the nature of the duty from the breach of which liability arises."); *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1006 (Colo. 2008) ("[T]he nature of the relief is not dispositive as to the question of whether a claim lies in tort. Rather, the relief requested is merely an aid in understanding the duty breached or the injury caused to determine if the claim lies or could lie in tort.").

¶ 24    Our supreme court identified the CADA's purpose as

> to make the claimant whole within a particular setting, i.e., to place the claimant in the position she would have been in but for the discriminatory conduct. These forms of relief . . . are equitable in nature and are aimed at eliminating workplace discrimination, not compensating individuals for their particular injuries arising from violations of the [CADA].

*Connors*, 993 P.2d at 1175 (citation omitted). In our view, the 2013 amendments to the CADA did not change its fundamental purpose. *Houchin*, ¶ 43 (Berger, J., concurring in part and dissenting in part). Instead, the expanded remedies available under the amendments remain "merely incidental" to the CADA's primary purpose of ending workplace discrimination. *See Brooke*, 906 P.2d at 71.

¶ 25    As well, the monetary limitations set by the CADA for compensatory damages support its underlying non-tort purpose. *See* § 24-34-405(3)(d)(I)-(II).  The compensatory damages cap is consistent with the "incidental" nature of any individual benefit a claimant receives under the CADA.  Thus, the General Assembly's inclusion of compensatory damages in the CADA does not alter the CADA's primary objective of eradicating workplace discrimination. *See Connors*, 993 P.2d at 1174.  Accordingly, we conclude that the compensatory damages remedy, added to the CADA in 2013, does not lie in tort and is not subject to the CGIA, because it does not relieve "tort-like personal injuries." *Id.* at 1175.

¶ 26    As well, we conclude that section 24-34-405(8)(g) exempts compensatory damage requests for discrimination claims (other than those for age discrimination) from the CGIA.  We observe that the General Assembly specifically referenced the CGIA and stated its intent to prohibit the recovery of punitive damages from state employers in section 24-34-405(3)(b)(I) of the amendments.  But in the same amendment that added compensatory damages to the CADA in subsection (3)(g), the General Assembly clarified, in subsection (8)(g), that compensatory damages sought against the

state are *not* subject to the CGIA. Reading these provisions together, as we must, and recognizing that the General Assembly enacted these amendments knowing that *Connors* considered the CADA remedies to be equitable in nature, we conclude that the General Assembly intended that compensatory damages awarded under the CADA be excluded from the immunity provisions of the CGIA. *Cowen v. People*, 2018 CO 96, ¶ 12 ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992))); *Massihzadeh v. Seaver*, 2019 COA 92, ¶ 13 ("Questions of statutory interpretation necessitate, first and foremost, consideration of the statutory text as a whole, giving 'consistent, harmonious, and sensible effect to all of its parts and avoiding constructions that would render any words or phrases superfluous or lead to illogical or absurd results.'" (quoting *Pineda-Liberato v. People*, 2017 CO 95, ¶ 22)).

¶ 27 We are not persuaded to the contrary by the *Houchin* majority's interpretation of the word "state" in subsection (8)(g). *Hogan v. Bd. of Cty. Comm'rs*, 2018 COA 86, ¶ 37. Like the partial dissent in *Houchin*, we interpret the word "state" broadly to include

14

all state entities able to seek immunity under the CGIA. Indeed, we see no reason to "limit[] many public employees' recourse to compensatory damages [for unlawful discrimination claims] only because they happen to be employed by one of Colorado's numerous political subdivisions, as opposed to the state itself[.]" *Houchin*, ¶ 54 (Berger, J., concurring in part and dissenting in part). When defining "employers" subject to the CADA in section 24-34-401(3), C.R.S. 2019, the General Assembly included the "state of Colorado . . . and every other person employing persons within the state." If, as argued by the EPSO (and adopted by the *Houchin* majority), the word "state" in subsection (8)(g) is limited to state of Colorado employees, then the General Assembly would have used the language "state of Colorado" to achieve this limitation. Because it did not, and because we must construe all provisions of the CADA harmoniously, we conclude that the General Assembly intended "state" in subsection (8)(g) to include all state employers, not just state of Colorado employers. *See Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010) ("[O]ur interpretation should give consistent, harmonious, and sensible effect to all parts of a statute."). Because we find the statutory

language sufficient to refute the conclusion reached by the *Houchin* majority, we need not decide whether its interpretation violates equal protection. *Developmental Pathways v. Ritter*, 178 P.3d 524, 535 (Colo. 2008) (noting that the principle of judicial restraint requires courts to avoid reaching constitutional questions in advance of the necessity of deciding them).

¶ 28    In sum, we conclude that front pay and compensatory damages for a retaliation claim under the CADA are equitable remedies not barred by the CGIA. We further conclude that Mr. Williams is an "aggrieved party" under section 24-34-405(8)(a), that EPSO is a state employer, and, thus, that subsection (8)(g) exempts the compensatory damages remedy from the CGIA.

## IV.   Conclusion

¶ 29    We affirm the court's order as it relates to the retaliation claim, and the front pay portion of the court's order for the age discrimination claim. We reverse the compensatory damages portion of the court's order for age discrimination and conclude that the CGIA bars it.

JUDGE PAWAR and JUDGE GRAHAM concur.